IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : CRIMINAL NO. 19-64-04 |
| MICHAEL NEILL | : |

## MICHAEL NEILL'S SENTENCING MEMORANDUM

### Introduction

### I. The Facts and Procedural History

On December 21, 2022, Michael Neill appeared before this Honorable Court and pled guilty to Counts 4, 19, 20, 35, 42 and 87 of the Indictment, pursuant to a written guilty plea agreement. This agreement was effectuated and prepared by the Government and was furthermore the product of intense negotiations and scrutiny. The plea agreement with Mr. Neill was a comprehensive effort, completely promulgated and seized upon by the Government as benefiting Mr. Neill in this case (without ever mentioning until 1 week prior to sentencing that they now consider Mr. Neill to be in an enhanced defendant status). As this Court will read, the Government unilaterally added last-minute language to their sentencing memorandum,

1

within the past week, stating that Michael Neill is now to be considered an "organizer, leader, supervisor, manager or supervisor" of criminal activity, thus enhancing the sentencing guideline calculations from a *Total Offense Level* of 13 (See PSR of June 12, 2023) to a *Total Offense Level* of 15 (See PSR of February 13, 2023). This last-minute alleged enhancement has only been asserted by the Government to alleviate their fear that this Court may consider the provisions of USSG §4C1.1 *Adjustment for Certain Zero-Point Offenders*. Mr. Neill would have qualified for a well-deserved decrease in his offense level by two-points (thereby reducing his Total Offense level to 11). At this juncture, Mr. Neill raises the issue for the Court to examine the motives of the Government as well as *negating* the notion that Michael Neill fits the characterization as "organizer, leader, supervisor, manager or supervisor." Specific Objections to the Government's recitation of this description as well as Objections to the February 13, 2023, PSR are set forth below in greater detail.

As to other procedural events in the case, pursuant to USSG §1B1.2, the parties stipulated that Mr. Neill committed certain tax offenses in addition to the substantive offenses and he understood and agreed that, for the purpose of determining the his Sentencing Guidelines range, USSG §1B1.2(c) provides that these additional offenses shall be treated as if he had been convicted of

additional counts charging these offenses: filing a false tax return, in violation of 26 U.S.C. § 7206. Also, Mr. Neill agreed that he is responsible for the restitution amount on the embezzlement and theft charges in this case and has agreed to pay specific amounts prior to sentencing. He further agreed that restitution shall include losses caused by his own relevant conduct in this case, as defined under USSG §1B1.3.

Mr. Neill also agreed to cooperate fully with the Internal Revenue Service (IRS) and agreed to pay all taxes, interest, and penalties, as determined by the IRS to be due and owing. Michael Neill understood and agreed that the amount of tax due and owing will be adjusted and that he remains responsible for same.

## II. SECTION 3553(a) FACTORS TO BE CONSIDERED

After this Court correctly calculates the applicable sentencing guidelines and at the same time giving fair consideration to potential departure bases, ultimately the Court must impose a sentence sufficient, but not greater than necessary, to comport with the goals of sentencing. 18 U.S.C. § 3553(a). In doing so, the Court must consider the variety of factors articulated in section 3553(a) and determine whether an upward or downward variance from the guidelines is warranted based on the particular circumstances of a defendant's case. The circumstances of Mr. Neill's case allow this court to impose a

sentence below the guidelines range that will nonetheless provide a just result.

The Court must impose a sentence that "protect[s] the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). Imposing a below-Guidelines sentence neither condones the conduct nor endangers the public; rather, it properly reflects the culpability of the defendant in light of all of the purposes of sentencing. There is no need to imprison Mr. Neill because there is no risk that he will commit crimes in the future. His lone foray into criminal conduct is not only an isolated occurrence but he now must live with the consequences of his own conduct in his own life. While the very real prospect of losing his liberty remains primary among these consequences, we ask the Court to consider the fact that Mr. Neill is now employed with an electrical contracting firm that has embraced his skills and utilizes his experience for their good and his good. It is a symbiotic current employment arrangement and a strong, ongoing opportunity for Michael Neill to work every day. Perhaps Michael Neill can contribute better to the community by allowing him to remain free and to do more community service work. We admit that this indictment and the collateral consequences need to be faced and accepted. And Michael Neill understands and accepts the damage to his reputation and recognizes the impact on his family as well as the message that one must not engage in any wrongdoing. As a convicted felon, Michael Neill's employment prospects are diminished because his skills and experience will be tainted by his criminal record. But this current employer,

post-indictment, is giving him an opportunity for redemption and rehabilitation.

In ending this portion, while the Court must impose a sentence that "afford[s] adequate deterrence to criminal conduct," 18 U.S.C. § 3553(a)(2)(B), it is not necessary to sentence Michael Neill within the guidelines to accomplish that goal. In fact, a sentence well below the guidelines in this case would still constitute a significant punishment and, therefore, promote respect for the law and general deterrence. As with specific deterrence, imposing a sentence well below the Guidelines neither condones the conduct nor endangers the public; rather, it properly reflects the culpability of the defendant in light of all of the purposes of sentencing.

## MICHAEL NEILL IS A PERSON WHO HAS ALWAYS ASSISTED OTHERS AND ACTED RESPONSIBLY NOTWITHSTANDING THE EXISTING CHARGES

### A. **Michael Neill's Background and Family History.**

The pre-sentence report on Michael Neill is extensive and forthcoming and telling of a life that, up until the revelation of this criminal conduct, has played by all the rules. The personal and family data set forth in the latest version of the pre-sentence investigation report from ***Paragraphs 72 through 93*** illuminate for the Court the stellar background of someone who conformed to all of the regulations he faced, accepted responsibilities in life, met

5

challenges head-on and excelled at being a real human being, treating everyone with dignity and respect.

We need not highlight any portions of that report as this Court has it in its possession for review. It is extensive. We simply rely on its content at this juncture. It could not have been better written by an advocate of Michael Neill for this Court to review in considering the fate of Mr. Neill.

B. **Michael Neill's Support from Friends, Family, Neighbors and Others.**

Notwithstanding the government's position that he consciously and deliberately abused the trust of union members, there is another side to Michael Neill which reflects a lifetime of service to the welfare of others, interaction with the community for charitable deeds and personal accomplishments put to beneficial use for others.

The paragraphs of the indictment and the government's memo tend to mask the alternate side of Michael Neill's life, which has always contained a commitment to service to others. Michael Neill having grown up and flourished in his own neighborhood has always exhibited a commitment to helping the community around him to improve and thrive. The letters submitted to the Court from family, friends, community leaders, and others that know Mr. Neill demonstrate that his commitment to helping others is broad, deep and long lasting and that he is a positive influence in his community for those in need.

The significant number of letters (See Exhibit A) written on Michael Neill's behalf outline the times and events when he assisted so many other people in an altruistic and helpful manner. These same people, family, friends, relatives, neighbors and others have actually poured their hearts out to us in these letters asking the Court to take into consideration these good deeds of Mr. Neill.

From the time he was a child until this very day, Mr. Neill has amassed a substantial number of people whom he interacted with in a positive and benevolent way and who now wish to appear on his behalf and to speak to the Court so that his other side will be known.

A giving individual, a father, a neighbor, an educator, a coach, a Working man, Benevolent, Considerate, Kind, Generous, Respectful, Reliable, Supportive. All of these descriptive words can be found in the letters written to the Court.

The wording in every letter is heartfelt. It becomes difficult to imagine that Mr. Neill stands before this Court guilty of crimes for which he accepts responsibility, but it is true and real and must be dealt with. We humbly ask the Court to consider this outpouring from so many sources asking for leniency on behalf of Michael Neill. Life's lessons are tough, and Michael Neill is contrite and accepting and seeks redemption. He has the power and the

fortitude to change his life. Michael Neill grasps the notion that anyone contemplating engaging in unlawful conduct will surely result in utterly life-altering and disastrous consequences as it has for him.

III. **GUIDELINE REVIEW AND OBJECTIONS TO PSR**

As previous presented, there has never been any indication that Michael Neill, within the context of his conduct as related to the indictment of this case, played any role as "organizer, leader, supervisor, manager or supervisor." The materials presented from 5 years beforehand never pointed to Michael Neill in this capacity. The government in its own review of this case never mentioned it, never seized upon it and never reflected it as any type of potential enhancement, especially in negotiations toward resolution of this case dating back to 2021. Now, and only within the last week of February 8, 2024, does the government seek an increase in guideline calculations as they realize that the provisions of §4C1.1 provide a decrease of two levels from the offense level determined under Chapters Two and Three for offenders who did not receive any criminal history points under Chapter Four, Part A and whose instant offense did not involve specified aggravating factors. This is a complete reversal of the government's assessment of this case as related to Michael Neill. Neither the discovery materials dating back 5 years nor the trial testimony place Michael Neill in a role warranting the aforesaid enhancement.

In reviewing the factors relating to USSG §3B1.1, the court should consider the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy. This adjustment does not apply to a defendant who merely suggests committing the offense. Michael Neill points at no one else and hereby suggest to the Court that he should not be assessed any points under USSG §3B1.1 or any other section. Moreover, the provisions of §4C1.1, Adjustment for Certain Zero-Point Offenders such as Michael Neill should be applied, thereby reducing Mr. Neill's total score to 11.

## CONCLUSION

Notwithstanding these charges, Michael Neill has continued to educate himself on proper and righteous conduct. In other words, Michael Neill has the ability, the knowledge and the strength, to follow the rules and conditions set forth by the Court and to cultivate his ability to act, think and become a man who retains the honor of being a viable citizen. The defendant will admit that he is a changed man, who acted

in the worst way possible, creating this very serious case against him. He remains contrite, accepting the fate that will befall him and asking for mercy from the Court.

Michael Neill has clearly demonstrated that he is able to be supervised without a shred of recidivism. He has been on pre-trial supervision for a significant period of time and is a model participant. Hence, our humble request for a non-custodial sentence.

Michael Neill entered his guilty plea because he was guilty, and he wanted to begin putting this incident behind him as soon as possible. It is inconceivable at this juncture that the government has now decided to move away from their very own assessment of the case by cloaking their original, hard-fought estimation of the guideline range with this last-minute increased submission. Mr. Neill's compliance and behavior during the course of this case demonstrate that he is truly sorry for his involvement and that he is willing to pay his debt to society and move on. Plainly, Michael Neill is not an individual who needs to be incarcerated for any period in order to protect the public. The shame of this case is substantial. The public knows of his downfall and Mr. Neill accepts that negative notoriety as his punishment. Yes, the Union Members are the victims. Mike Neill faces them and apologizes. But these bad decisions and bad conduct will never be forgotten and will linger a lifetime for Mike Neill. We come to the Court as humble and seeking redemption.

For all these reasons it is respectfully requested that the court impose a period of supervised release rather than a period of incarceration.

If this Honorable Court does take notice of Michael Neill's sincere efforts at rehabilitating his life, accepting his fate, paying his restitution, fines, his compliance with restrictions, then it is possible to remain unincarcerated. This Court has the power and the authority to consider this aspect, along with all of the other words set forth herein, of the Defendant's life in calculating a reasonable, fair, and just sentence below the advisory guidelines. Again, a period of Supervised Release as a final sentence satisfies all concerns.

In ending, counsel for the defendant has attempted to present every aspect of Mr. Neill's life to the Court along with a proper guideline consideration.

Respectfully submitted,

/s/ Joseph P. Capone
Joseph P. Capone, Esquire
Attorney for Defendant Michael Neill

Date: February 16, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on this date I caused a true and correct copy of the foregoing to be served by e-mail, upon the following:

Assistant U.S. Attorney
Bea L. Witzleben, Esquire
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106
Bea.Witzleben@usdoj.gov

/s/ *Joseph P. Capone*
Joseph P. Capone, Esquire
Attorney for Defendant Michael Neill

Dated: February 16, 2024